GOODYEAR YELLOW PINE CO. *v.* SUMRALL.*

(Division A. Feb. 25, 1929.)

[120 So. 734. No. 27482.]

---

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 1402, p. 1220, n. 71.

*L. L. Tyler* and *J. C. Shivers,* for appellant.

*Currie & Currie* and *Hall & Hall,* for appellee.

Cook, J. The appellee, S. E. Sumrall, instituted this suit in the circuit court of Pearl River county against the Goodyear Yellow Pine Company, seeking to recover damages for personal injuries alleged to have been sustained by him as the result of the negligent operation of a log skidder near which the appellee was employed as a log decker. The trial of the cause resulted in a verdict for the appellee for the sum of one thousand eight hundred dollars, and, from this verdict and the judgment entered in pursuance thereof, this appeal was prosecuted.

The declaration alleged that the appellee was injured while he was employed by the appellant as decker at one of the steam skidders owned and operated by the appellant; that said skidder was a car, within the meaning of that word as used in the laws of this state; that it was equipped with drums, cables, booms, levers, and other appliances, by means whereof logs could be drawn from the woods to the railroad track and there decked or piled in places convenient for loading them onto log cars; that the said skidder was equipped with a large flexible steel cable called the main line or log cable, fastened at one end to the car, and then wound around a drum or a revolving shaft on the platform of the skidder; that the other end of this cable would then be attached to the harness on a horse, and the cable unwound from the drum and carried into the woods by riding the horse out into

the woods and to the log to be drawn in; that the cable was then dropped loose from the horse and fastened to a log by another employee called the tongman; that an employee on the skidder called the drumman would then, by the manipulation of levers, apply the steam to the drum so as to cause it to revolve, and, by means of the cable wound thereon, draw the log from the woods to a place near the skidder; that, when the log was drawn in, the main line cable would be taken loose therefrom and a shorter cable called the decker cable attached thereto, by which the log would then be picked up and properly placed or piled on the log deck; and that it was a part of the duties of the appellee to attach this decker cable to the log after the main line cable had been unfastened from it.

The declaration further averred that, when the skidder was in operation, the log cable and decker cable would often be in operation at the same time; that, while the rider on the horse would be drawing the main line cable out into the woods, the appellee would be engaged in fastening or unfastening the decker cable and decking the log last drawn in; and in so doing he was compelled at all times to occupy a position on the ground by the side of, or near, the steam skidder, within close and dangerous proximity to the main line cable, where there was danger of being struck and injured by said cable or any object thrown or hurled by coming in contact therewith, if the said drumman or the said rider should be guilty of negligence in operating the same.

The declaration further alleged that, while the rider was negligently running the horse which was drawing the main line cable out into the woods, the drumman negligently and suddenly put the brake on the drum on the skidder, thereby suddenly stopping the drum and causing the cable to be drawn tight and to be thrown high off the ground; that, as a result of the sudden tightening of the cable, a large limb of a tree, which had

negligently been allowed to become entangled with the cable, was thrown with great force and violence against appellee's head, thereby seriously injuring him; that the drumman knew, or, by the exercise of ordinary care and caution, should have known, of appellee's peril at the time, and that he was in great danger of being struck and injured or killed by said main line cable, or any tree top or limb thereto attached, if said cable should be suddenly stopped and jerked up into the air; that the said drumman knew, or, by the exercise of ordinary care and caution, could and would have known, that the appellee was not in a position to see and know where said cable was, or what movement of the same was then going on, and consequently had to depend for his safety upon the proper handling of such skidder by the drumman, and the proper handling of the main line cable by the drumman and the rider of the horse; and that, as the result of the negligence of the drumman and the rider of the horse in allowing the log cable to pass under, or become entangled with, said tree top or limb, and the negligence of the rider in running the horse back into the woods. and the negligence of the drumman in applying the brake to the drum, and thereby suddenly stopping it and the movement of the cable, the appellee sustained the injuries complained of and fully described in the declaration.

The averments of the declaration as to the construction and operation of the skidder, drum, and cable, and the method and manner of drawing in and decking logs were established by the testimony offered by the appellee, and the testimony amply supports the finding that the appellee was injured while he was engaged about his duties in connection with the decking of a log, by a limb or piece of a tree top which was thrown against his head as a result of the log cable being jerked or thrown into the air.

Other than the appellee himself, the only witness who. undertook to describe the manner in which the appellee was injured, and the cause of the accident, was one Sam Johnson, the flagman at the skidder, who claimed to have been an eyewitness to the injury and the incidents causing it, and he testified that, when the appellee received the injury, he "was hooking the decking hook to a log, and the rider was going to the woods with the main line with his horse in a lope, and when he got in the woods about two hundred feet from the decker the main line was on the ground under a tree top that was forked, and suddenly the drumman applied the brake, and threw the main line and the tree top against Sumrall's head, and knocked him down, and jerked the horse back, and almost threw the rider over the horse's head." This witness testified that he had had long experience in working around skidders, and that a sudden application of the brake to the drum on the skidder, when the horse was drawing the main line cable into the woods at a rapid rate, would cause the cable to be thrown into the air with great force, and that so to apply the brake created a situation which was very dangerous to the decker, or any one working around or near this cable.. He further testified that it was the duty of the drumman to give a warning signal and to know that the decker had reached a place of safety before applying the brake when the cable was being drawn into the woods, but that, on the occasion when the appellee was injured, the drumman suddenly applied the brake to the drum without giving a signal or warning to the appellee, and as a result the cable was tightened and thrown into the air, thereby causing appellee's injury. This witness further testified that he was looking at the drumman when he applied the brake and suddenly stopped the drum, and that this action of the drumman was the sole cause of the cable being thrown off the ground and thereby causing the injury. He further testified that the speed at which the

horse travels in drawing the cable into the woods has nothing to do with causing the cable to be thrown into the air, unless there is friction on the drum caused by the application of the brake, and that the speed of the horse would not, and could not, have caused the injury to the appellee, if this brake had not been applied. There was some testimony to the effect that the cable could be thrown into the air by the horse suddenly starting or suddenly jumping a log or other obstruction, but there was no testimony that any such thing occurred when the appellee was injured; but, on the contrary, the testimony for the appellee tended to establish the fact that the sole cause of the injury was the sudden application of the brake to the drum on the skidder.

The drumman was offered as a witness by the appellant, and he denied that the brake on the drum was applied by him, or that the cable was jerked or thrown into the air. He testified that the appellee was behind a deck of logs out of his view, and that it was the duty of the decker, the appellee, in such case, to watch out for the line being carried to the woods by the horse and to avoid the same.

Over the objection of the appellant, the court instructed the jury that, if the appellee was injured while working for the appellant as decker at one of its skidders, he was entitled to recover, if his injury was the direct and proximate result of the negligence of the rider in negligently riding or running the horse too fast in carrying the cable out into the woods, and thereby jerking the cable up and causing a limb or small tree top to be thrown or hurled against the appellee, and the appellant assigns as error the granting of this instruction.

We are of the opinion that, under the proof in this record, this instruction is clearly erroneous, for the reason that there is no proof upon which to base it. Under the proof in this case, the speed of the horse at the time of the accident was only a condition, and not the proxi-

mate, or a concurring proximate, cause of the accident and injury to the appellee. The appellee himself testified that, when the cable is being drawn out into the woods by the horse, it slides on the ground, and will no' rise or fly into the air unless the drumman applies the brake and suddenly stops the drum. Sam Johnson, a man of long experience in working on and around skidders, and who claimed to be an eyewitness to the entire occurrence, testified that the sudden application of the brake by the drumman was the sole cause of the injury to the appellee, and that, when the rider is carrying the cable back to the woods, the cable is automatically stopped by a weight on the drum when the horse stops, regardless of how fast the horse has been traveling. He further testified that the speed of the horse was not the cause of the injury to appellee, but that it was caused solely by the drumman suddenly applying the brake to the drum. Some of the witnesses for the appellant testified that, under certain circumstances the cable could be thrown into the air by a sudden jerk thereon by the horse, as, for instance, by making a sudden start while the drum was revolving, or by suddenly jumping a log and thereby causing the line to be suddenly tightened. However, there was no evidence tending to show any such possible occurrence, but, on the contrary, all the positive testimony tended to show that no such thing happened, and that the tightening of the cable which caused the accident was due solely to the negligence of the drumman in suddenly applying the brake to the drum under the conditions existing at that time, one of the elements constituting such condition being the fact that the cable was being rapidly drawn from around the revolving drum.

The appellee also secured several instructions charging the jury, in effect, that the appellant would be liable to the appellee for any injury received or sustained by him while working in the employment of the appellant

that was caused or contributed to, either in whole or in part, by the negligence of the drumman and the rider, or either of them. Under the views hereinbefore expressed in considering the instruction authorizing a recovery for the supposed negligence of the rider, it was error to grant these instructions authorizing a consideration of alleged concurrent negligence of the drumman and the rider, but the instructions should have limited the jury to a consideration of the alleged negligence of the drumman under the conditions and circumstances shown by the evidence to exist at the time, including the speed of the horse at the time of the alleged application of the brake.

We do not think any of the other assignments of error present reversible error, but for the errors indicated in the instructions, the judgment of the court below will be reversed, and the cause remanded.

*Reversed and remanded.*

